JOURNAL ENTRY AND OPINION
Defendant-appellant Harvey S. Resnick (Resnick) appeals from the judgment in contribution entered against him subsequent to an ex parte trial conducted at the time of the final pretrial conference. For the reasons adduced below, we reverse and remand.
A review of the record on appeal indicates that Resnick and plaintiff-appellee Leonard A. Entel (Entel) were co-owners and officers of Knickerbockers Haberdashers, Inc., a mens' retail clothing store formerly located at La Place Mall in Beachwood, Ohio.
On April 1, 1992, Resnick and Entel executed a promissory note in the amount of $50,000 which evidenced a loan from James Shapero. Mr. Shapero was a friend of Entel and had no personal relationship with Resnick. Tr. 11, 30. This promissory note, which was drafted by Entel from another business form and typed by Entel on Knickerbockers Haberdashers, Inc. stationary, see Tr. 23-24, stated the following:
 For value received, the undersigned, Knickerbockers Haberdashers, promises to pay to the order of James Shapero the principal sum of $50,000.00 payable in quarterly payments commencing April 1, 1993 and continuing for 48 months.
Quarterly interest payments shall begin July 1, 1992.
Interest shall be computed at 7 1/2%.
 Presentment, notice of dishonor and protest are hereby waived by Maker hereof. This Promissory Note shall be binding upon Maker and heirs, personal representatives, successors and assigns.
Entel signed the promissory note as Leonard A. Entel, V.P. and Resnick signed as Harvey S. Resnick, Pres.
The $50,000 was paid by Shapero to the clothiers in two equal installments of $25,000 each, was placed in the corporate account and used solely for corporate business, not for the personal benefit of Entel or Resnick. Tr. 17, 32-33.
Knickerbockers Haberdashers, Inc. went out of business at the end of 1993. Shapero was not repaid on the note following the liquidation of the corporate assets.
Shapero filed a complaint on May 26, 1994 against Entel on the unpaid note. See Shapero v. Entel, Cuyahoga County Common Pleas Court, General Division, Case No. CV-271171. Entel was defended by the same law firm which had helped Entel shut down the clothing business. That action was settled and dismissed with prejudice in March of 1995 when Entel agreed to execute a cognovit installment note in the amount of $47,500, and provide a cash payment of $2,500 at the time of executing the note, as satisfaction of the obligations pled in the Shapero complaint. Entel executed the installment note in his personal capacity on April 19, 1995.
On August 16, 2000, Entel filed the present action against Resnick alleging that the two men had executed the Shapero promissory note in their respective individual capacities. See complaint at paragraph 1. Entel further alleged that he made the settlement to Shapero in order to mitigate any liability Entel had under the promissory note. Entel sought contribution from Resnick pursuant to R.C. 1303.14. Resnick filed his answer on January 11, 2001 generally denying the allegations presented in the complaint, and asserted various affirmative defenses, including, among others, waiver and failure to state a claim for relief.
On March 30, 2001, the court, via a status form entry, canceled a pretrial conference scheduled for April 3, 2001, and rescheduled it to May 3, 2001 at 8:30 a.m., stating that All clients must be present. This order was journalized on April 3, 2001 and the postcard box was checked. See Journal Vol. 2579, page 447.
On April 6, 2001, Resnick filed a motion to excuse his personal attendance at the May 3, 2001 pretrial conference on the basis that he is a resident of San Francisco, California, and his attendance would require him to incur needless, significant expense. Resnick requested that he be permitted to attend the pretrial conference by telephone. On April 9, 2001, Entel, who resides in Landenburg, Pennsylvania (near Delaware, according to the movant), and citing significant expense, filed a motion to attend the May 3, 2001 pretrial conference by telephone.
On April 27, 2001, the trial court denied Entel's motion to excuse his personal attendance at the May 3rd pretrial, and granted Resnick's motion, but only for the May 3rd pretrial in the case of Resnick. See Journal Vol. 2588, page 869. Thereafter, the parties engaged in discovery and summary judgment practice.
On November 21, 2001, the trial court issued its ruling denying Resnick's motion for summary judgment. See Journal Vol. 2671, pages 100-107, journalized on November 21, 2001. In the status form order accompanying this ruling, the trial court scheduled a pretrial conference for January 8, 2002 at 2:30 p.m. and mandated that all clients must attend. Id. Further, this status form order set a trial date of February 12, 2002 at 9:00 a.m. Id. The postcard box was checked on the status form.
On November 28, 2001, Entel filed a motion to excuse his physical attendance at the January 8 pretrial, citing the significant expense of traveling from Pennsylvania, and requested that he be permitted to attend via telephone.
On December 3, 2001, Resnick's counsel filed two motions. First, a motion to continue the scheduled trial date due to counsel being scheduled to commence trial in another case in the same court house on February 11, 2001. Second, a motion to excuse his physical attendance at the January 8 pretrial, citing the needless, significant expense of traveling from California, and requested that he be permitted to attend the final pretrial via telephone.
By status form entries made on December 27, 2001, and journalized on December 31, 2001, with postcard notice to the parties, the trial court made the following rulings: (1) denied Resnick's motion to continue the trial date due to a scheduling conflict because the present case is older than the case in the other courtroom which is causing the conflict in the scheduling of the two trials, that a continuance of trial should be sought in that other case; (2) denied Entel's motion to appear by way of telephone at the January 8 pretrial since Entel sought damages in excess of $25,000 and the court can award judgment against deft on pltf testimony if deft fails to appear at the pretrial on January 8; and, (3) denied Resnick's motion to appear by way of telephone at the January 8 pretrial, stating, If deft fails to appear pltf may proceed ex parte pursuant to Common Pleas Rule 21. See Journal Vol. 2684, page 999.
On January 8, 2002, the court convened the scheduled pretrial conference. Entel and his counsel were present; Resnick failed to appear, but his counsel was present.[1] At that point, the court conducted an ex parte trial on the merits of the case, precluding Resnick's counsel from presenting any evidence, but permitting him to cross-examine Entel's witness(es).
Entel testified on his own behalf at the ex parte trial. During his testimony, Entel stated that the Shapero promissory note evidenced an intention to hold he and Resnick liable on the note both personally and in their corporate capacity. Tr. 13-14. According to the witness, Resnick knew Shapero through Shapero's dealings with the clothing store. Tr. 14. At the time of the ex parte trial, Entel had paid $22,500 to Shapero on the settlement. Tr. 21.
On cross-examination, Entel was confronted with his testimony from a prior deposition in which he stated, at page 20 of the deposition, that at the time of entering into the Shapero note, Shapero did not request that Entel personally guarantee the re-payment of the promissory note. Tr. 25-26. Entel next testified that Resnick, despite not being named a defendant in the Shapero lawsuit, paid 50% of the legal expenses Entel incurred in defending that lawsuit. Tr. 27-28. At the time of the Shapero lawsuit, Entel believed that he had only a personal obligation on the Shapero note because Shapero had loaned the money to the company solely because of my relationship with him; Entel felt a moral obligation to repay his friend, Shapero, for the money loaned to the corporation. Tr. 28-30. But for Entel's personal relationship with Shapero, Shapero would not have made a personal loan to Resnick under any circumstances. Tr. 31.
On re-direct examination, Entel stated that he was aware that his attorney in the Shapero lawsuit was billing Resnick for some portion of the defense, but Entel did not know if Resnick was actually paying anything toward the billing statements sent by counsel. Tr. 34. Thus, while Resnick probably had knowledge of the existence of the Shapero lawsuit, Entel's earlier testimony, concerning Resnick actually paying 50% of the legal defense in the Shapero lawsuit (which, if true, raises an inference that Resnick felt a personal obligation on the Shapero note), is placed in doubt.
On re-cross examination, Entel admitted that at the time he copied and typed the language of the Shapero note from a form he had found, he was unaware of the meaning and legal effect of the note's terms regarding personal representatives, successors, and assigns. Tr. 36. Entel was simply concerned at the time of making the Shapero note with memorializing an obligation to pay $50,000. Id.
Following this testimony and closing arguments, the court, seizing upon the use of language in the Shapero note concerning personal representatives, successors, and assigns, found that the two former clothiers had executed the note in their personal capacity and entered judgment in favor of Entel. Tr. 45-47. The court then ordered Entel's counsel to submit a proposed judgment entry. See Journal Vol. 2691, page 304, journalized January 15, 2002. The court journalized its detailed judgment entry in favor of Entel on January 25, 2002. See Journal Vol. 2695, pages 497-503.
Resnick's notice of appeal from the ex parte trial and the entry of judgment was filed on February 7, 2002. Appellant presents five assignments of error for review.
 The first assignment of error provides: I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING A CIV.R. 55 DEFAULT JUDGMENT AS A SANCTION AGAINST DEFENDANT-APPELLANT, AN OUT-OF-STATE DEFENDANT, FOR NOT PERSONALLY APPEARING AT A PRETRIAL, WHERE DEFENDANT-APPELLANT APPEARED IN THE MATTER BY FILING AN ANSWER, FILING A MOTION FOR SUMMARY JUDGMENT AND BEING REPRESENTED BY COUNSEL AT ALL STAGES OF THE LITIGATION, INCLUDING PRETRIALS.
In its January 25, 2002 multi-page judgment entry, the trial court made the following reference with respect to the procedural history of the case, specifically the entry denying Resnick's November 28, 2001 motion to excuse his personal appearance at the January 8, 2002 pretrial:
 On December 31, 2001, the Court issued a Docket Entry denying said Motion, on the grounds that Plaintiff would be entitled to a Default Judgment against Defendant Resnick, per Ohio Civil Rule 55, if Defendant failed to appear in-person at the aforesaid Final Pretrial Hearing. (Underline added.) Journal Vol. 2695, page 497.
The underlined portion of the preceding passage is a clear misstatement of the language actually employed by the trial court in its entry denying Resnick's motion to not personally appear at the final pretrial: The court, without reference to default judgment, actually gave notice that an ex parte trial could result if Resnick did not personally appear at the required time. See Journal Vol. 2684, page 999.
What eventually developed at the final pretrial herein was not a default judgment pursuant to Civ.R. 55, but an ex parte trial pursuant to Civ.R. 58 and Loc.R. 21, Part III, of the Rules of the Court of Common Pleas of Cuyahoga County, General Division. A default judgment could not occur under the facts of this case because Resnick had entered an appearance and made an affirmative pleading contesting the complaint. See Pete's Auto Sales v. Conner (Aug. 24, 2000), Cuyahoga App. No. 77014, 2000 Ohio App. LEXIS 3838 at 7-8. Thus, this assignment is not demonstrated by the record and has no basis in fact.
Assignment overruled.
The second and fourth assignments of error will be discussed in tandem since they each address the use of the ex parte proceeding.
The second assignment of error provides:
 II. IT WAS AN ABUSE OF DISCRETION AND AN ERROR OF LAW FOR THE TRIAL COURT TO IMPOSE A SANCTION UNDER LOC.R. 21 IN THE FORM OF ADVANCING THE TRIAL DATE, PROCEEDING WITH AN EX PARTE TRIAL AND IMPOSING JUDGMENT FOR DEFENDANT'S COUNSEL (sic) APPEARANCE AT A PRETRIAL WITHOUT HIS OUT-OF-STATE CLIENT.
 The fourth assignment of error provides: IV. THE JUDGMENT OF THE TRIAL COURT WAS RENDERED WITHOUT REASONABLE NOTICE OF THE TRIAL DATE, VIOLATING THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION.
In the second assignment, appellant attacks the trial court's decision to proceed with an ex parte trial at the final pretrial based on the physical absence of Resnick.
Loc.R. 21, Part III, of the Cuyahoga County Common Pleas Court, General Division (hereinafter Loc.R. 21), provides the following relevant portions:
 PART III: Final Pretrial Conference (A) The purpose of this conference is to effect an amicable settlement, if possible, to narrow factual and legal issues by stipulation or motion; and to set a date certain for trial. All final pretrial conferences shall be conducted by the assigned judge. (B) All plaintiffs must be present or, with permission of the Court, be available by telephone with full settlement authority.
 Each defendant or a representative of each defendant must be present or, with permission of the Court, be available by telephone with full settlement authority. If the real party in interest is an insurance company, common carrier, corporation or other artificial legal entity, then the chosen representative must have full authority to negotiate the claim to the full extent of plaintiff's demand. Plaintiff's demand must be submitted to counsel for defendant at least 14 days prior to the final pretrial conference.
* * *
 (D) If the Court concludes that the prospect of settlement does not warrant further Court supervised negotiations, then the Court shall act on any other matters which come before it at that time and efforts shall be made to narrow legal issues, to reach stipulations as to facts in controversy and, in general, to shorten the time and expense of trial.
* * * * * *
 (H) Any judge presiding at a pretrial conference or trial shall have authority: (1) After notice, dismiss an action without prejudice for want of prosecution upon failure of plaintiff and/or his counsel to appear in person at any pretrial conference as required by Part III(B) of this Rule.
 (2) After notice, order the plaintiff to proceed with the case and decide and determine all matters ex parte upon failure of the defendant to appear in person or by counsel at any pretrial conference or trial, as required by Part III(B) of this Rule. (Underline added.)
* * *
Appellant first argues that Loc.R. 21 was not violated because the rule, under the second sentence of subsection (B), contemplates that either defendant (Resnick), or a representative of defendant (in this case Resnick's attorney), be present at the pretrial or available by telephone with the permission of the court. See Loc.R. 21, Part III, (B). Given the use of the term representative in the third sentence of subsection (B), it is reasonable to suggest that the term representative, as used in subsection (B), was not meant to include the defendant's legal counsel, but was meant to include a representative of an artificial legal entity who would have the authority to negotiate the claim for settlement purposes. This view is further buttressed by subsection (H)(1), which permits the court to dismiss an action for want of prosecution if plaintiff and/or his counsel fail to appear at a pretrial conference, and subsection (H)(2), which permits an ex parte proceeding if defendant fails to appear in person or by counsel: If the rule contemplated a parties' legal counsel to be a representative of the party for purposes of Loc.R. 21, thereby only requiring legal counsel to appear at a pretrial as a representative in order to avoid adverse consequences stemming from the party's failure to personally attend the pretrial, these distinctions would not have been necessary.
Appellant, in the second assignment, next attacks the use of an ex parte proceeding as being unavailable to the court. The underlined language in the preceding rule clearly contemplates that the client be present at the final pretrial with authority to settle, and that a telephone conference, which would obviate the client's personal attendance, may be had with permission of the trial court. While both parties sought to appear at the final pretrial by way of telephone, the court denied these requests in its journalized order of December 31, 2001, and gave the parties advance notice that failure to personally appear could result in an ex parte trial being conducted pursuant to Loc.R. 21. Appellant cites to two cases in support of the alleged unavailability of the ex parte proceeding. In the first case, Bognar v. Cleveland Quarries Co. (Cuyahoga, 1966), 7 Ohio App.2d 187, 219 N.E.2d 827, this appellate court reversed the trial court's dismissal of an action for want of prosecution by a non-resident plaintiff who failed to appear for a pretrial hearing but was represented by counsel.
In Bognar, the plaintiff's counsel had filed a motion to continue the pretrial to a later date due to the client's non-residency. The version of Local Rule 21 in effect at that time permitted the court to excuse the attendance of non-resident parties at pretrials. The trial court in Bognar believed that the failure of plaintiff to appear at the pretrial was itself a violation of the court rules and that unless the defendant would agree to a continuance of the pre-trial to a later date, he would dismiss the action. 7 Ohio App.2d at 188. The defense in Bognar would not agree to a continuance, so the court dismissed the action for failure to prosecute.
This appellate court, noting that there was no evidence that plaintiff's absence was due to any act by plaintiff and concluding that counsel had not informed plaintiff of the date and time for the pretrial, and that plaintiff's counsel had requested a continuance, reversed the trial court in Bognar finding that the former version of Loc.R. 21 did not contain the provision relied upon by the trial court (to-wit, that dismissal for failure to prosecute was mandated if the opposing party did not agree to the continuance of the pretrial) in dismissing the action for want of prosecution.
The appeal sub judice does not involve a dismissal for failure to prosecute, as was the case in Bognar. Furthermore, the current version of Loc.R. 21 expressly provides for the ex parte proceeding utilized by the trial court upon the non-appearance of defendant at the final pretrial.
The next case relied upon by appellant is Barbato v. Miller (May 18, 2000), Cuyahoga App. No. 76536, 2000 Ohio App. LEXIS 2101. In Barbato, this appellate court reversed a finding of indirect contempt (without benefit of hearing or prior written notice of the charge) against the elderly and ill defendant for not appearing at the time of trial, which action was in violation of the court's order requiring her to appear at trial. Additionally, we determined that the trial court abused its discretion in not granting the defendant's motion to quash the subpoena requiring defendant's attendance at trial, and that, because the order to appear at trial was invalid, that no sanction of contempt could be based upon its violation. Further, with regard to the sanction of contempt as it relates to Loc.R. 21, Part III, (H)(2), nothing within [Loc.R. 21] permits a judge to impose any sanction should an attorney appear for trial without his client. Id., 2000 Ohio App. LEXIS 2101 at 16.
In the case sub judice, there was no sanction of contempt used by the court upon Resnick's not appearing personally at the pretrial. Instead, the court proceeded with an ex parte trial pursuant to the express authority granted it pursuant to Loc.R. 21, Part III, (H)(2). Thus, Barbato is not persuasive to the facts herein.
Appellant, in both the second and fourth assignments of error, argues that the trial court abused its discretion in proceeding ex parte due to inadequate notice of the ex parte trial to the defense and general unreasonableness in resorting to the procedure under the facts of the case. An abuse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140.
In support of these arguments, appellant points out that: (1) he had filed a motion to excuse his personal attendance at the pretrial on December 3, 2001, seeking to attend the January 8, 2002 pretrial by telephone; (2) Resnick's counsel received the postcard notice (denying his motion to excuse personal appearance and advising him of the possibility of proceeding ex parte in the event of his not personally attending the pretrial) approximately twenty-four hours before the scheduled January 8th final pretrial, thereby presenting a significant obstacle to Resnick, a man of limited finances, coming to Cleveland for a reasonable travel price on such short notice; (3) Resnick was available by telephone in California, therefore, the interests of justice would not be frustrated by his physical absence at the pretrial.
In the context of ex parte trials and minimal due process protection, a party is due reasonable notice from the trial court of the ex parte trial date. Ohio Valley Radiology Associates, Inc. v. Ohio Valley Hosp. Assn. (1986), 28 Ohio St.3d 118, 124-125, 502 N.E.2d 599. Reasonable notice is to be provided in order to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Id., citing Mullane v. Central Hanover Bank Trust Co. (1950),339 U.S. 306, 314. Loc.R. 21, Part III, (H)(2), expressly contemplates advance notice to a defendant of ordering a plaintiff to proceed ex parte upon that defendant's failure to appear.
In the present case, the first hint by the trial court of the possibility of proceeding ex parte on plaintiff's claims was the defendant's receipt of the December 31, 2001, order denying defendant's motion to excuse his personal attendance at the pretrial. This postcard notice was received by the defense approximately twenty-four hours prior to the scheduled final pretrial. This twenty-four hour period between receipt of the order and the commencement of the final pretrial does not provide reasonable notice to the defendant of the ex parte trial date. While this notice apprises the interested parties of the pendency of the action, it fails to afford those parties, in particular the defendant who would be most prejudiced by the ex parte proceeding, of the reasonable opportunity to present their objections in a meaningful manner prior to the commencement of the scheduled pretrial conference. Considering the fact that defendant was in California and, assuming that counsel notified his client immediately upon receipt of the postcard order that he had to come to Cleveland, defendant would have to abandon whatever he was doing at the time no matter how difficult and onerous, in order to attend the pretrial. The twenty-four hour notice, under the facts of this case, did not provide a reasonable window of time within which to avoid the imposition of an ex parte proceeding. By the time of the order's receipt, and assuming that defendant filed objections to an ex parte proceeding immediately upon receipt of the notice, defendant was almost certainly doomed to an ex parte proceeding since, by virtue of his residency, he could almost certainly not comply with his attendance in the event that his objections were overruled. This twenty-four hour notice, given the peculiar facts herein, is patently unreasonable notice of the ex parte trial date.
As previously noted, appellant also argues general unreasonableness under abuse of discretion in the court resorting to the use of an ex parte proceeding.
There is no question that trial courts have authority to impose sanctions where the actions of a party operate to thwart the judicial process. But justice requires that where a range of sanctions is available, the most drastic sanctions must be reserved for flagrant cases. American Housing Corp. v. Rhoades (1981), 1 Ohio App.3d 130, 131,439 N.E.2d 946, 947.
The purpose of a final pretrial conference is stated by Loc.R. 21, Part III, (A), namely, * * * to effect an amicable settlement, if possible, to narrow factual and legal issues by stipulation or motion; * * *.
In this day of modern telephone communication and facsimile machines, which hardware is available to the trial court, the relay of thought and data around the world in a matter of seconds is an everyday occurrence in the world of business and entertainment.
The use of travel to accomplish routine business meetings is increasingly seen in the business world as an anachronism in light of modern technologies which ease communication problems between parties, concern over worker productivity, and cost. Except for needlessly inflating the cost of litigation, and concurrently forcing the client who bears this expense to, undoubtedly, more favorably consider the possibility of settlement rather than incurring greater legal expenses, we can see little advantage in having the person of the client present at the final pretrial so long as that client is available by telephone so that he/she can be consulted and take part in efforts to narrow factual and legal issues and to effect an amicable settlement.
This is not a hard and fast rule to be applied under all circumstances in all cases. In some cases, particularly in matters involving complex litigation where the risks of misunderstanding are heightened due to that complexity thereby making effective long-distance communication more problematic, the judicial process may be better served when the client, or his representative, is actually present at the pretrial conference and able to converse first-hand with counsel and the court. However, this situation is not present in the case at hand given the following factors: (1) the limited financial resources of the defendant, who would have to attend the scheduled trial should the case not settle; (2) the considerable distance defendant must travel to attend the final pretrial conference; (3) the relatively simple issues and limited amount of damages confronting the trial court; (4) the fact that discovery had been completed and dispositive motions had been disposed of by the court prior to the final pretrial conference. Certainly, there is no evidence in the record suggesting that Resnick's physical presence was essential to a productive final pretrial conference. See American Housing Corp., supra, at 131. In short, the record does not demonstrate that the judicial process and purpose of conducting a final pretrial would be thwarted by having Resnick available by telephone at the final pretrial.
Accordingly, it was an abuse of discretion to proceed ex parte and not permit Resnick to appear at the final pretrial by telephone.
The second assignment of error is affirmed in part and overruled in part; the fourth assignment of error is affirmed. The third and fifth assignments of error are overruled as moot. See App.R. 12(A)(1)(c).
Judgment reversed and remanded for further proceedings.
This cause is reversed and remanded for further proceedings. It is, therefore, considered that said appellant recover of said appellee his costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
ANN DYKE, J., and FRANK D. CELEBREZZE, JR., J., CONCUR.
[1] At 9:33 a.m. on January 8, 2002, Resnick filed a pretrial statement in the case with the Clerk of Court.